Case Number: **22-15769**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

MARIA C. LUNA,
*Appellant*,

versus

CALIFORNIA DEPARTMENT OF CORRECTIONS AND
REHABILITATION; CALIFORNIA MEDICAL FACILITY,
*Appellees*.

---

On Appeal from the Judgment of Dismissal by the United States
District Court for the Northern District of California, San Francisco
Case No. 3:20-cv-08097-EMC
The Honorable Edward M. Chen, Presiding

---

APPELLANT'S OPENING BRIEF

---

Mario Valenzuela, Esq. (*pro bono counsel*)
THE ADVOCATES' LAW FIRM, P.C.
2225 E Street, Suite 201
Bakersfield, California 93301-3837
Telephone: 661-377-2154
Facsimile: 888-222-5864
Email: Mario@theadvocateslaw.com
*Attorney for Appellant*

# TABLE OF CONTENTS

I.   INTRODUCTION ..........................................................................................4

II.  STATEMENT OF BASIS OF APPELLATE JURISDICTION .........................6

III. STATEMENT OF QUESTIONS PRESENTED .................................................7

IV. STATEMENT OF REVIEW ..........................................................................8

V.   PROCEDURAL HISTORY OF THE CASE ...................................................8

VI. STATEMENT OF FACTS ...........................................................................9

VII. LEGAL STANDARDS AND ARGUMENT ...................................................15

      1.   SUMMARY JUDGMENT STANDARD - REVERSAL IS REQUIRED BECAUSE APPELLEE FAILED TO MEET ITS BURDEN BASED ON THE EVIDENCE APPELLEE PRESENTED FOR SUMMARY JUDGMENT. .........................................................................................15

      2.   HOSTILE WORK ENVIRONMENT STANDARD - APPELLEE ALLOWED A HOSTILE ENVIRONMENT TO EXIST BY FAILING TO TAKE CORRECTIVE MEASURES AFTER THE IEX INCIDENT AND/OR THE STALKING INCIDENTS. .................................................16

      3.   APPELLEE FAILED TO TAKE CORRECTIVE ACTIONS TO REMOVE THE HOSTILE WORK ENVIRONMENT. ...........................22

      VIII.   RELIEF REQUESTED AND CONCLUSION ....................................27

Certificate of Compliance ...........................................................................28

Statement of Related Cases .........................................................................28

## CASES

*Clark County Sch. Dist. v. Breeden*, 121 S. Ct. 1508 ........................ 17

*Davis v. Team Elec. Co.*, 520 F.3d 1080 ............................................. 18

*Freitag v. Ayers*, 463 F.3d 838 .......................................................... 17

*Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643 .................................... 18

*Little v. Windermere Relocation, Inc.* 301 F.3d 958 ......................... 17

*Nunez v. Superior Oil Co.* 572 F2d 1119 ........................................... 19

*Powell v. Morris*, 37 F. Supp. 2d 1011 .............................................. 18

*SEC v. Murphy*, 626 F.2d 633 ........................................................... 19

*Tritchler v. County of Lake*, ................................................................. 8

*Corales v. Bennett*, 567 F.3d 554 ...................................................... 15

*Furnace v. Sullivan*, 705 F.3d 1021 .................................................... 8

*McGuckin v. Smith, 974 F.2d 1050* (C.A.9 (Ariz.), 1991). ................. 15

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.* (2nd Cir. 1999) 182 F3d 157 ......................................................................... 15

*Thomas v. Ponder*, 611 F.3d 1144 ..................................................... 16

## STATUTES

28 U.S.C. § 1291 .................................................................................. 7

28 U.S.C. § 158(d) ............................................................................... 7

42 U.S.C. § 1983 .................................................................................. 8

## RULES

Fed. R. App. P. 4(a)(1) ........................................................................ 7

Fed. R. Civ. P. 56 ............................................................................... 15

## I.    INTRODUCTION

Appellant Maria C. Luna ("Appellant") submits this Opening Brief seeking reversal of the District Court judgment following summary judgment by the District Court in favor of Appellee.

Appellant brought an employment discrimination suit based on a Title VII hostile work environment claim, and state law tort claims against Appellees California Department of Corrections and Rehabilitation ("CDCR") and the California Medical Facility in Vacaville ("CMF") (collectively hereinafter "Appellee").

This case involves a February 9, 2018, indecent exposure incident where an inmate (the "Inmate") housed at the California Medical Facility in Vacaville, California, exposed his penis and masturbated as he stared intently at Appellant, a registered nurse proving group medical education to inmates (the "IEX Incident").  Subsequently, the angry Inmate stalked and gawked Appellant on October 12, 2018, through a window. On October 22, 2018, the Inmate started walking toward Appellant in the hallway in order to make an unwelcome encounter. Finally, on November 29, 2018, the Inmate brazenly snuck into a nursing group class Appellant was teaching knowing he was prohibited from

participating in the health education group classes that Appellant taught. These subsequent stalking events were completely preventable had Appellee complied with Appellee's obligation to take corrective measures to stop the harassment against Appellant.

Instead, Appellee shielded itself by presenting disingenuous information to the District Court indicating that CMF was subject to a Special Master and that the Inmate's action was a product of mental illness to justify not transferring the Inmate. Appellee indicates that the Inmate's mental condition formed the basis of the IEX Incident, and as such, a Special Master's report is cited by the Appellee asserting that the Appellee is prohibited from transferring the Inmate. However, the record states that the IEX Incident was not based on a mental condition and there is no evidence that the Inmate could not have been transferred.

Appellee provided policies inapplicable during the time period of the IEX Incident to hide the fact that the IEX Incident was considered a 'threat' under Appellee's own policies. Appellee did not follow its own policies. Appellee cannot claim there was no genuine issue as to any material fact, and because of this, the burden never shifted to Appellant. Under the totality of circumstances, the IEX Incident was severe, and

that severity and pervasiveness could only be measured by the fact finder. As a matter of public policy, Title VII claims in a prison environment cannot and should not be discounted simply because the setting is a prison because this gives unjustified cover to employers to not act or inadequately act. This is not a case of a correctional officer in a housing unit or general population. This is a case of a registered nurse performing medical services in an outpatient treatment facility located on correctional grounds. This is a significant distinction that prevents Appellee from invoking a blanket 'prison' facility shield in order to avoid liability.

The District Court erred in finding that the Appellee showed that there was no genuine dispute as to any material fact. The Appellee's evidence demonstrated otherwise, and the Appellee's evidence was misplaced.

## II.    STATEMENT OF BASIS OF APPELLATE JURISDICTION

This is an appeal from an order granting summary judgment in favor of the Appellee entered by the District Court for the Northern District of California, San Francisco [case number 3:20-cv-08097-EMC]

on April 28, 2022, against the Appellant. Appellant's Excerpt of Record Index "2-ER-002-023".

This Court has jurisdiction under 28 U.S.C. § 158(d) and 28 U.S.C. § 1291. The judgment was entered on April 28, 2022, by District Court became the final judgment so appealed. 2-ER-001.

The Notice of Appeal to this Court was filed with the District Court on May 19, 2022, within the time allowed under Fed. R. App. P. 4(a)(1). 2-ER-533-534.

## III.   STATEMENT OF QUESTIONS PRESENTED

The questions presented in this appeal are:

1. Did the District Court err in granting summary judgment to Appellee when the facts indicate that Appellee failed to meet its burden of proof?

2. Did the District Court err in not recognizing material disputes?

3. Did the District Court err in finding that the IEX incident was not pervasive and severe?

4. Did the Appellee take correction actions to eliminate a hostile environment?

7

## IV.   STATEMENT OF REVIEW

We review a grant of summary judgment de novo. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).  Conclusions of law by a District Court are reviewed de novo. *Tritchler v. County of Lake*, 358 F.3d 1150, 1154 (9th Cir. 2004).

## V.   PROCEDURAL HISTORY OF THE CASE

Appellant Maria C Luna filed her pro se complaint entitled "EMPLOYMENT DISCRIMINATION COMPLAINT" on November 12, 2020.    1-ER-026-030. Appellant sued for "Repetitive exposure to intimidating and Hostile work environment; Intentional/Negligence Infliction of Emotional Distress due to hostile work environment." 1-ER-027. Appellant exhausted her administrative remedies and was issued a Right to Sue letter by Equal Employment Opportunity Commission on August 13, 2020.  1-ER-029:030. Appellee answered the complaint on January 20, 2021. 1ER-031-037. The District Court appointed counsel for Appellant on May 4, 2021, for the limited purpose of settlement and discovery related to settlement. 1-ER-038. The District Court set a bench trial for August 15, 2022. 1-ER-039. On August 30, 2021, the District Court appointed counsel for the

Appellant for all purposes for the duration of the case. 1-ER-46.

Appellee filed a motion for summary judgment on November 19, 2021. 1-ER-048-080. Appellant opposed [2-ER-253-485], Appellee Replied [2-ER-486-498], and the court ruled in in favor of Appellee. 1-ER-003-024.

## VI. STATEMENT OF FACTS

Appellant, a Filipino American nurse employed by the California Department of Corrections and Rehabilitation on June 4, 2004, [1-ER-090:10-13] and was working at California Medical Facility in Vacaville as a registered nurse whose duties included, but not limited to, educating inmates on mental/medical health issues in a mental health department. 1-ER-090:25-091:9. Appellant's skill set as a registered nurse was described as "excellent" and she "absolutely" and unquestionably "benefited patient care." 2-ER-291:17-25. Appellant performed her duties in a Nursing Group setting with a capacity of 14 inmates and no correctional officer at her immediate disposal. 1-ER-092:20-093:5. Appellant is one of two registered nurses that provide this education to inmates on two different floors with Appellant working on the second floor. 1-ER-095:1-10. Appellant works in room

212 in the O Wing that houses mental health classrooms and mental health clinician offices. The O Wing has two correctional officers at the entrance custody station only. 1-ER-130:10-19.

### The Indecent Exposure ("IEX") with Masturbation Incident

On February 9, 2018, while Appellant was educating inmates in her Nursing Group. Inmate "exposed his penis intently ... with ... stroking motion, with his eyes wide open towards..." Appellant, gawking her. 1-ER-104:25-105:22. Inmate was masturbating about 8 feet away from Appellant. 2-ER-417. Appellant was surrounded by other male inmates when the IEX occurred, so she ran out of the classroom in fear for her safety. 1-ER-104:24-106:5; 1-ER-146:21:24. Appellant, despite having an alarm and whistle, felt the threat so significant that running away was the only way to save herself. 1-ER-106:20-23; 1-ER-146:20-23. Appellant could not risk staying in the small room as she did not know what would happen next [1-ER-107:5-17], a female with multiple inmates and Inmate gawking her while openly masturbating towards Appellant.

Appellant reported the IEX Incident to the officers on duty, the sergeant on duty, and her immediate supervisor. 1-ER-107:2-9.

10

Appellant filed an IEX Incident report, but the duty sergeant refused to accept the CDC 128-B form report because it would stay on Inmate's record, and Appellant wanted to ensure other staff members were protected. 1-ER-114:21-100:19. Appellant returned the following Monday and filed the CDC 128-B form report with another duty sergeant. 1-ER-115:20-25. Appellant was not informed of the process or outcome of her reporting. 1-ER-116:2-12. Appellant learned that Inmate was attending other classes and that other nurses were scared of Inmate. 1-ER-118:18-119:1.

## The Stalking Incidents

In one incident on October 12, 2018 [1-ER-135:9-21], Appellant caught Inmate staring at her intently through the glass window all by himself. 1-ER-123:19-124:19. Inmate was looking straight at Appellant. 1-ER-128:6-10.

In the second incident on October 22, 2018 [1-ER-129:2-11], Appellant started walking in the hallway and saw that Inmate moved and started walking toward the center where Appellant would be walking by. Inmate was looking very intently at Appellant. 1-ER-131:7-15. In fact, it was a scary stare. 1-ER-133:7-14. Inmate had

previously told Appellant he murdered an Asian woman by hitting her with a rock on the head and leaving her for dead. 1-ER-133:18-134:9. To avoid contact with Inmate, Appellant started a conversation with porters who were cleaning a classroom until Appellant left. 1-ER-125:1-15.

The third incident occurred on or about November 29, 2018 [1-ER-136:5-12], when Inmate snuck into Appellant's classroom and frightened her to the point he was in state of shock until she composed herself and asked Inmate to leave. 1-ER-136:13-138:2. Inmate had to be asked more than once to leave the classroom and he was angry. Appellant described Inmate stating: "But he was upset, just staring intently at me with, like, anger in his face that I did not answer him at all." 1-ER-138:3-5. Inmate went outside and sat on the bench across the classroom, and he was upset. Appellant asked the officers to watch him. 1-ER-139:14:23. Appellant cried and was so shaken by Inmate that she was unable to complete her class. Appellant once again reported and documented the incident. 1-ER-140:8-14. Appellant was terrified and could not work. 1-ER-141:1-2.

No alternative duties or reasonable accommodations were ever

offered or given to Appellant to eliminate or reduce the exposure to Inmate. 1-ER-142:6-146:8. Appellant was told there was no authority to transfer Inmate to another facility. 1-ER-146:22-147:6. Appellant sought corrective measures in the form of reasonable accommodations to avoid being exposed to Inmate. 1-ER-152:24-153:22. Appellant was denied work accommodations. 2-ER-307; 2-ER-513:25-514:5. Inmate's IEX Incident was designated as a threat per Appellee's rules. 1-ER-154:17-25.

Appellant was threatened with the IEX Incident, surrounded by male inmates in a prison medical facility building where medical professionals work to provide medical and mental health services to inmates. After the IEX Incident or after the three stalking incidents, Appellee did not take steps to eliminate the hostile work environment. The steps taken were mainly designed to punish the Inmate but not necessarily to ensure the Appellant's work environment was free of hostility. In fact, policies were not followed, including not identifying the IEX Incident as a threat when, in fact, it was a CDCR defined threat. Appellant requested that the Inmate be transferred to a different facility, but the Appellee refused and did not consider such a

request. In addition, Appellee disingenuously presented an assertion to the District Court that a Special Master would prohibit such a transfer without actually considering the transfer, diagnosing the Inmate with a mental condition relating to the IEX, or seeking Special Master approval. The Special Master report did not provide any evidence of such rigid requirements or oversight at CMF. 1-ER-064:¶VII. Appellee further asserted that the Inmate suffered from a mental condition and that a Special Master would prohibit such a transfer as a result. 1-ER-065:¶VIII. The record actually indicates that the IEX Incident was not a product of a mental condition. The record indicates that the claim of a mental condition was in dispute. 1-ER-188-189.

In short, there was no Appellee actions, or if there was, those actions were inadequate and unreasonable. The lack of action resulted in Appellant having to endure a hostile work environment. Appellee's failed to prevent a hostile work environment. Appellant was subjected to the IEX Incident and three separate stalking incidents. The Inmate was lying in wait on October 12, 2018, October 22, 2018, and November 29, 2018, because Appellee did not take

corrective actions to prevent a hostile work environment.

## VII.  LEGAL STANDARDS AND ARGUMENT

1.  <u>SUMMARY JUDGMENT STANDARD - REVERSAL IS REQUIRED BECAUSE APPELLEE FAILED TO MEET ITS BURDEN BASED ON THE EVIDENCE APPELLEE PRESENTED FOR SUMMARY JUDGMENT.</u>

A motion for summary judgment provides a procedure for terminating without trial actions in which "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

Because summary judgment is a "drastic device," cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material fact. *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.* (2nd Cir. 1999) 182 F3d 157, 160.  "An issue of material fact is genuine if there is

sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

As stated below, Appellee has failed to meet its heavy burden. In fact, Appellee's own evidence demonstrates that it has not met its burden.

2. <u>HOSTILE WORK ENVIRONMENT STANDARD - APPELLEE ALLOWED A HOSTILE ENVIRONMENT TO EXIST BY FAILING TO TAKE CORRECTIVE MEASURES AFTER THE IEX INCIDENT AND/OR THE STALKING INCIDENTS.</u>

A plaintiff asserting a Title VII claim under a hostile work environment theory must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist. To establish the existence of a hostile work environment, "a plaintiff must prove that (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." The third element requires us to consider the totality of the circumstances and whether the harassment was both objectively and

subjectively abusive. With respect to the question of liability for harassment caused by a third party, the employer's corrective measures must be "reasonably calculated to end the harassment"; the reasonableness of the corrective action will depend on, inter alia, the employer's ability to stop the harassment and the promptness of the response. *Freitag v. Ayers*, 463 F.3d 838, 849 (9th Cir. 2006) (citations omitted); Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. "Indeed, the Supreme Court recently noted that an isolated incident can amount to a "discriminatory change[]in the 'terms and conditions of employment'" when the incident is "extremely serious."" *Clark County Sch. Dist. v. Breeden*, 121 S. Ct. 1508, 1510 (citation omitted). *Little v. Windermere Relocation, Inc.* 301 F.3d 958, 967 (9th Cir. 2001).

In this case, the IEX Incident was sexual in nature (penis exposed and masturbation) and was considered serious and a felony by CDCR. 1-ER-191. The conduct was unwelcomed as demonstrated by Appellant's escape from her classroom following the IEX Incident [2-ER-352], and efforts made to avoid Inmate in the stalking incidents; notification to correctional staff and supervisors; and filing of reports with Appellee. The IEX Incident was sufficiently pervasive and severe

and the measurement of such is both an objective and subjective measure for a factfinder to determine based on the totality of the circumstances. *Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 648 (9th Cir. 2021)(citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1096 (9th Cir. 2008)).

The District Court relied on *Powell v. Morris*, 37 F. Supp. 2d 1011, 1017 (S.D. Ohio 1999), a case involving one 'sexual assault' incident in a correctional setting where the plaintiff alleged that sex offenders roamed unsupervised and unguarded; however, in Powell, the guard was right outside her office and the inmates worked there. To work there the inmates were vetted before they were selected. In the present case, Appellant, there were only two guards at the entrance of the long hallway [1-ER-130:10-19], and Inmate was present almost daily. 2-ER-421:457. The stalking incidents demonstrate his freedom of movement.

It was improper for the District Court to act as the factfinder of the pervasiveness or severity of the IEX at the summary judgment stage. Where the trial will be to the court, it may decide mixed questions of law and fact on summary judgment if a trial will not

enhance its ability to draw inferences from the undisputed facts. *SEC v. Murphy*, 626 F.2d 633, 656 (9th Cir. 1980). *Nunez v. Superior Oil Co.* 572 F2d 1119, 1126 (5th Cir. 1978) (Inference to be drawn requires "experience with the mainsprings of human conduct" and "reference to the data of practical human experience," the jury must make the determination and summary judgment is improper.) Whether the IEX incident was pervasive and severe enough is disputed, and whether the Appellee took proper remedial action, as indicated below, is disputed. The disputes identified by Appellee are material.

## A. Appellee presented no evidence that CMF was subject to Special Master restrictions that would prevent transferring Inmate, nor that a transfer of the Inmate was even considered.

In support of the assertion that Inmate could not be transferred to a different facility, Appellee hides behind a claim that CMF is subject to a Special Master and that such transfer would be prohibited. In reality there is no evidence in the record that requires the Special Master to approve an inmate transfer at CMF. The evidence in the record identifies the prison facilities that are subject to the Special Master, not that a transfer prohibition existed. 1-ER-064:¶VII. In fact, CDCR Captain

Moeckly, stated during a deposition: "So to answer your question, could he [Inmate] be transferred to a different facility? Yes, he could, but again, that's a -- they would have to review his classification score, his enemy situation at other facilities, and so forth and so forth." 2-ER-276:23-277:3. In short, a transfer was possible, but it was never considered or reviewed so Appellee can assert that corrective steps were made to eliminate the hostile work environment in order avoid liability.

**B. Appellee presented no evidence, diagnosis, or a medical finding, that the IEX Incident was a product of mental illness suffered by the Inmate – the record indicates Inmate's behavior was intentional and predicated on a desire to stay incarcerated.**

Appellee asserts that there is precedence from the Special Master based on a case in Pelican Bay State Prison holds that inmates that have IEX incident attributed to mental illness require treatment over punishment. In the Pelican Bay State Prison case, there was a provisionally approved guide that required treatment for inmates that engaged in public masturbation. Intervention was required to "treat significant disability/dysfunctionality in an individual diagnosed with or

suspected of having a mental disorder" connected to public masturbation.

1-ER-230-231. The Special Master report in the record states "Not every

instance of public exposure and/or masturbation is related to a serious

mental disorder." 1-ER-230.

In this case there is no evidence that Inmate has been diagnosed

with a 'mental disorder' by a clinician. RVR [Rules Violation Report]

Mental Health Assessment at Section II, question 3, it states:

> 3. In your opinion, is there evidence to suggest that (a) mental
> illness and /or (b) developmental disability /cognitive or
> adaptive functioning deficits contributed to the behavior that
> led to the RVR? If Yes, establish a nexus between mental
> health symptoms or developmental disability/cognitive or
> adaptive functioning deficits and the behavior.

In response to this question, the report provides:

> He says, "I'm depressed. I feel like killing myself. I was under
> so much pressure. [redacted] explains he exposed himself to
> get to ad seg and delay his parole. He is anxious about
> returning to the community after being incarcerated for so
> many years. A mental illness did contribute to the RVR
> behavior. Severe mood swings lead to poor judgment and
> impulsive behavior. **His clinician is not available but
> documentation is consistent with this conclusion**. ERMS has
> two 115s in 2017 for sexual disorderly conduct, but he did not
> actually expose his penis. He previously stated he was
> scratching himself. Other past 115s include disrespect, cell
> phone in 2011, stalking [finally reduced to lesser offense] a
> female cook in 2007, IEX x2 in 1999, masturbating in 1997,

ejaculating in the R wing corridor in 1995, weapon in 1992, and masturbating while talking to a MTA in 1990.

2-ER-343 (emphasis added.)

Appellee provided a January 2021 Inmate Sexual Misconduct Reduction Plan [2-ER-320:329] to provide guidance to clinicians [2-ER-326] however, this plan was not the operative plan during any of the incidents in 2018 and should not have been considered by the District Court. 2-ER-007:12-16. Appellee provides no diagnosis by a clinician to support medical treatment for the IEX incident. Appellee provided no evidence that a transfer to another medical facility was not reasonable.

In sum, there is no evidence of a diagnosed mental disorder tied to Inmates IEX. There is evidence that Inmate took deliberate action because he feared life outside prison. 2-ER-343. In fact, Inmate acknowledged he messed up. 1-ER-168. The evidence actually points to a deliberate and knowing action by appellant to ensure a longer incarceration because he feared life outside the prison.

3. **APPELLEE FAILED TO TAKE CORRECTIVE ACTIONS TO REMOVE THE HOSTILE WORK ENVIRONMENT.**

Although Inmate was administratively found guilty of the IEX incident, none of his sanctions resulted in eliminating the hostile work

environment for Appellant. The sanctions imposed on Inmate included 90 days credit loss; 90 days canteen privileges; 90 days phone privileges; 90 days packages restrictions; 90 days property restrictions; and 90 days loss of appliances. 1-ER-169:170. Appellee CDCR did not remove Inmate from contact with Appellant because Appellee was determined not to be a threat. It was the nursing department that removed Inmate from Appellant's group classes. In other words, the nurses protected themselves, and 5-foot 4-inch Appellant, from a 6-foot 200-pound inmate [2-ER-288] that is a Supreme Captain in an identified terror radical group. 2-ER-458:460. But this protection was limited as Inmate moved freely within the Enhanced Outpatient Program treatment building – O Wing. 2-ER-421-457.

Appellee took no corrective measures to remove the hostile environment. Appellee did not provide accommodation to Appellant like a move to a different facility. 2-ER-288. There was no evidence that Appellee had any discussions with Appellant related to accommodations [2-ER-297], no accommodations were offered [2-ER-292], or any documentation [2-ER-276], or any kind of restrictions to assist Appellant [2-ER-292].

Appellee simply determined that it would be impossible for Inmate to avoid contact with Appellate and end its efforts there. 2-ER-284.

## A. Appellee presented policies inapplicable to the District Court to support the summary judgment motion and even then, failed to follow its own policies.

The January 2021 Inmate Sexual Misconduct Reduction Plan presented by Appellee was not the operative plan in 2018 and cannot be relied upon. 2-ER-007:13-16. There is no record of the applicable Inmate Sexual Misconduct Reduction Plan covering the period of February 2028 through November 2018.

The record indicates that Inmate was placed on Administrative Segregation on the day of the IEX because Appellee determined that Inmate "Presents an immediate threat to the safety of self or others," and he "Endangers institution security." 2-ER-410-411. This threat was based on the IEX incident.

Per the Operations Manual, Article 25 — Inmate Indecent Exposure And Sexual Disorderly Conduct Management, indecent exposure will not be tolerated by Appellee and an "inmate who engages in Indecent Exposure ... shall be subject to a variety of Security Measures

in an attempt to identify, prevent, reduce, and eliminate the opportunity to repeat the behavior." 1-ER-249.

Inmates who engage in acts of Indecent Exposure ... will be subject to Security Measures that are designed to decrease the opportunity for the inmate to repeat the behavior and/or minimize the impact that the behavior has on prison staff and others. Immediate Security Precautions are implemented following a report ... of Indecent Exposure... the assigned Captain in consultation with the Interdisciplinary Treatment Team (IDTT) may remove or extend these precautions..." 1-ER-250 (Section 52100.4). The record is not clear that an IDTT Team was formed as to the February 9, 2018, IEX as Appellee's designee, Captain Moeckly, referenced review of only the inmate's future programming needs being completed by the institutional classification committee. 2-ER-272. When Appellant filed her IEX report, Appellant specifically stated (of Inmate): "Don't want him in my classes." 2-ER-161. The IEX did not result in a ban of Inmate by Appellee in Appellant's classroom, and Captain Moeckly found the lack of such ban unreasonable. 2-ER-275:1-6.

With respect to the three stalking incidents. Appellant filed reports, CDC-128-B, two of them filed on October 26, 2018, relating to the October

12 and 22, 2018 incidents [1-ER-159], there was no review or action by Appellee other than filing the reports in the inmate file. 2-ER-288:1-9.

Appellee CDCR did not remove Inmate from contact with Appellant because Appellee was determined not to be a threat at some point. 2-ER-288:3-8. It was the nursing department that removed Inmate from Appellant's group classes. *Id.* In other words, the nurses protected themselves, but this protection was limited.

Pursuant to the Operations Manual, Article 9 - Assessment of Threats Against Staff, at Section 12040.4, Inmate's deliberate action in the IEX was a direct threat. 2-ER-316:318. Appellant made and filed all necessary reports. Under Section 12040.6, a process of reporting and fact-finding was required but Appellant's stalking reports were not reviewed or acted upon.

In sum, the inapplicable January 2021 policy, the Inmate's sexual nature history [2-ER-343], the IEX, the failure to take appropriate measures that should be designed prevent repetitive behavior, the failure of IDTT Team formation addressing the threat, and the complete failure of taking any action related to the stalking events resulted in a continued hostile environment.

## VIII. RELIEF REQUESTED AND CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the decision of the District Court because Appellee did not meet is burden, disputed material facts exist, and it was improper for the District Court to be the factfinder at the summary judgment stage in this case.

Respectfully submitted,

May 19, 2023                              THE ADVOCATES' LAW FIRM, PC

s/ Mario Valenzuela
MARIO VALENZUELA
Attorney for Appellant
MARIA C. LUNA

## Certificate of Compliance

The undersigned certifies under Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 32-1, that the attached opening brief is proportionally spaced, has a type face of 14 points or more and, pursuant to the word-count feature of the word processing program used to prepare this brief, contains 5,335 words and 25 pages, exclusive of the matters that may be omitted under Rule 32(a)(7)(B)(iii).

## Statement of Related Cases

Pursuant to Ninth Circuit Rule 28-2.6, Appellant confirms that Appellant is not aware of any related cases pending in this Court, other than underlying civil proceeding in the United States District Court for the Northern District of California, case number 3:20-cv-08097-EMC.

May 21, 2023          THE ADVOCATES' LAW FIRM, PC

s/ Mario Valenzuela
_____
MARIO VALENZUELA
Attorney for Appellant
MARIA C. LUNA

CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system or ACMS system. I further certify that all participants in the case are registered CM/ECF or ACMS users, and that service will be accomplished by the appellate CM/ECF or ACMS system.

THE ADVOCATES' LAW FIRM, PC

s/ Mario Valenzuela
Mario Valenzuela, Esq., Pro Bono Counsel for Appellant Maria C. Luna