IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Case No.: 22-15769

**MARIA C. LUNA,**

Appellant,

**v.**

**CALIFORNIA DEPARTMENT OF CORRECTION; AND REHABILITATION, CALIFORNIA MEDICAL FACILITY,**

Appellee

On Appeal from the United States District Court
for the Northern District of California

No. 20-cv-08097-EMC
Hon. Edward M. Chen, United States District Judge

**APPELLEES' ANSWERING BRIEF**

ROB BONTA
Attorney General of California
CHRIS A. KNUDSEN
Senior Assistant Attorney General
MIGUEL A. NERI
Supervising Deputy Attorney General
GREG CALL
Deputy Attorney General
State Bar No. 227588
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA 94612-0550
 Telephone: (510) 879-0820
 Fax: (510) 622-2270
 Email: Greg.Call@doj.ca.gov
*Attorneys for California Department of Corrections and Rehabilitation; California Medical Facility*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................... 1

II.  STATEMENT OF JURISDICTION ........................................ 2

III.  STATEMENT OF ISSUES ...................................................... 2

IV.  STATEMENT OF CASE ......................................................... 3

    A.  Luna Works at California Medical Facility as a Nurse Assessing and Teaching Inmate Patients. ............ 3

    B.  CDCR Policies for IEX Incidents .................................... 4

    C.  Luna is Subjected to a Single IEX Incident by an Inmate Patient who Attended One of Her Group Classes ............................................................................. 5

    D.  CDCR's Responsive Measures ....................................... 7

    E.  Luna Has a Total of Three Minor Encounters with the Inmate Patient Seven Months Later .......................... 9

V.  PROCEDURAL HISTORY ..................................................... 11

VI.  LEGAL STANDARD .............................................................. 14

ARGUMENT ..................................................................................... 15

I.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT SUMMARY JUDGMENT ON APPELLANT'S TITLE VII CLAIM WAS PROPER ...................................... 15

    A.  The Undisputed Material Facts Established Luna Was Not Subjected to a Hostile Work Environment ................................................................... 16

    B.  Summary Judgment Was Proper Because CDCR Took Immediate, Appropriate, and Effective Corrective Action ......................................................... 21

    C.  CDCR's Corrective Actions Were Consistent with All Applicable Policies ................................................. 26

CONCLUSION ................................................................................. 30

i

**TABLE OF CONTENTS**
**(continued)**

**Page**

Statement of Related Cases............................................................................ 31

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Liberty Lobby. Inc.*
477 U.S. 242 (1986)........................................................................ 14, 15

*Bodman v. Maine, Dep't of Health & Hum. Servs.*
787 F. Supp. 2d 89 (D. Me. 2011)........................................................ 24

*Brooks v. City of San Mateo*
229 F.3d 917 (9th Cir. 2000) ............................................................ 17, 21

*Celotex Corp. v. Catrett*
477 U.S. 317 (1986)............................................................................ 14

*Coleman v. Schwarzenegger*
922 F.Supp.2d 882 (E.D. Cal. 2009) .................................................... 26

*Daniels v. CDCR*
No. 2:10-cv-00003-MCE-AC, 2013 U.S. Dist. LEXIS
165897 (E.D. Cal. Nov. 20, 2013)........................................................ 19

*Dawson v. Entek Int'l*
630 F.3d 928 (9th Cir. 2011) ............................................................... 22

*Ellison v. Brady*
924 F.2d 872 (9th Cir. 1991) ........................................................... 17, 18

*Freitag v. Ayers*
468 F.3d 528 (9th Cir. 2006) ........................................................ *passim*

*Harris v. Robles*
No. 120CV01406SABPC, 2021 WL 6339270 (E.D. Cal.
Feb. 4, 2021) ......................................................................................5

*Harvill v. Westward Communications LLC*
433 F.3d 428 (5th Cir. 2005) ............................................................... 25

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Logan v. U.S. Bank Nat'l Ass'n*
    722 F.3d 1163 (9th Cir. 2013) .................................................................. 15

*Ludovico v. Kaiser Permanente*
    57 F.Supp.3d 1176 (N.D. Cal. 2014)................................................. 18, 19

*McGinest v. GTE Serv. Corp.*
    360 F.3d 1103 (9th Cir. 2004) ........................................................... 17, 20

*Oncale v. Sundowner Offshore Servs., Inc.*
    523 U.S. 75 (1998)..................................................................................... 19

*Reynolds v. County of San Diego*
    84 F.3d 1162 (9th Cir. 1996) .................................................................... 14

*Sabra v. Maricopa Cty. Community College Dist.*
    44 F.4th 867 (9th Cir. 2022) ..................................................................... 12

*Slayton v. Ohio Dept. of Youth Servs.*
    206 F.3d 669 (6th Cir. 2000) .................................................................... 19

STATUTES

Federal Rule of Civil Procedure
    § 56 (a)....................................................................................................... 14

Federal Rules of Appellate Procedure
    § 32.1 ......................................................................................................... 20

CONSTITUTIONAL PROVISIONS

Eighth Amendment ......................................................................................... 26

OTHER AUTHORITIES

California Code of Regulations, Title 15
    § 3007 ................................................................................................... 8, 23

iv

## I. INTRODUCTION

This Court should affirm the District Court's grant of summary judgment in this sexual-harassment case based on a single incident of indecent exposure ("IEX") by an inmate patient ("Inmate Patient"). Appellant Maria C. Luna ("Luna") is a nurse who works for the California Department of Corrections and Rehabilitation ("CDCR") in the psychiatric unit of the California Medical Facility. The District Court correctly concluded that CDCR was entitled to summary judgment because CDCR took immediate and appropriate corrective action reasonably designed to prevent further harassment by the inmate.

CDCR cannot be held liable for the actions of the Inmate Patient because the undisputed material facts established that CDCR responded promptly in manner reasonably designed to stop the Inmate Patient's harassment and to deter further harassment. Specifically, CDCR permanently banned the Inmate Patient from attending Luna's mental-health classes. CDCR also referred the Inmate Patient to a disciplinary hearing and presented evidence at the hearing that established the Inmate Patient was guilty of IEX in violation of regulations governing inmate conduct. CDCR then imposed discipline on the Inmate Patient that resulted in the inmate

losing a number of privileges for 90 days, losing 90 days of good-behavior credit (in effect lengthening his sentence), and being required to wear an exposure control jumpsuit for 90 days. CDCR also placed placards in the Inmate Patient's cell windows limiting his view of staff for 90 days. Further, CDCR also referred the matter to the Solano County District Attorney for criminal prosecution. CDCR's actions were effective because there were no further IEX incidents. Because the CDCR neither ratified nor acquiesced in the Inmate Patient's conduct it is not responsible for his harassment. Accordingly, this Court should affirm the District Court's decision.

## II. STATEMENT OF JURISDICTION

This Court has jurisdiction to hear an appeal of a judgment of the District Court.

## III. STATEMENT OF ISSUES

1. Should this Court affirm the District Court's judgment for CDCR on Luna's Title VII claim on the ground that Luna cannot establish a hostile work environment?

2. Should this Court affirm the District Court's judgment for CDCR on Luna's Title VII claim on the ground that CDCR promptly took reasonable action to address the inmate's IEX and prevent further incidents?

## IV.  STATEMENT OF CASE

### A.  Luna Works at California Medical Facility as a Nurse Assessing and Teaching Inmate Patients.

Luna is a registered nurse and has been a CDCR employee since 2004. AER Vol. 2, 239.  Luna started working as an instructor with the mental-health unit at CMF around 2016 or 2017.  The CMF inmate population consists of criminal convicts with medical and mental-health issues requiring medical intervention.  Luna's duties include conducting group classes with 14 inmates at a time and educating inmates regarding subjects on mental- and medical-health issues.  She also assesses inmates' medical concerns and refers them to doctors for treatment. Luna also triages inmate patients regarding their medical and mental concerns, assessing what medical issues need to be treated.  AER Vol. 1, 75, 77.

Group classes and medical appointments at CMF are held in a three-story, rectangular-shaped building known as the O-2 building.  AER Vol. 1, 80, 81.  The O-2 building is connected to the building where inmates are held through a secured entrance guarded by CDCR officers, who check inmate patients to make sure that they are scheduled for an appointment or a group class before they access the O-2 building.   AER Vol. 1, 115.  The O-2 building's left side has classrooms for group classes, while the right side has

3

doctors' offices, psychologists' clinics, and social workers' clinics for inmate treatment. AER Vol. 1, 81. The hallway in the center of the O-2 building separates the classrooms from the doctors' offices and have waiting areas. *Id*. All those accessing the O-2 building – including inmates with a valid reason to be there, CDCR/CMF staff, and contractors – necessarily share the same hallway. AER Vol. 1, 115, 134-35.

When an inmate patient does not act appropriately, such as by disrupting a class session, Luna deals with the problem right away before it escalates, and she calls an officer only if the inmate patient refuses to leave as instructed. AER Vol. 1, 141.

According to Luna, she works at CMF's mental-health unit because it is the only one that fits her schedule, is close to her house, and is convenient for her to attend to family needs. AER Vol. 1, 87, 126.

### B. CDCR Policies for IEX Incidents

CDCR's Operations Manual ("DOM") provides detailed policies for managing inmate IEX incidents. AER Vol. 1, 234. Section 52100.4 provides that "Inmates who engage in acts of Indecent Exposure or Sexual Disorderly Conduct will be subject to Security Measures that are designed to decrease the opportunity for the inmate to repeat the behavior and/or minimize the impact that the behavior has on prison staff and others." *Id*. at

4

235.  Such Security Measures include precautions such as limiting an inmate's ability to observe staff through use of placards or screens, and use of an exposure-control jumpsuit,[1] as well as disciplinary restrictions that are applied as a result of disciplinary action.  Disciplinary restrictions may include loss of good-behavior credits, and loss of privileges for up to a maximum of 90 days for canteen, appliances, packages, telephone, or personal property privileges.  *Id*. at 236.  The inmate is also required to have a mental-health assessment, which assessment may be used to determine the penalties to be applied.  *Id*.  The DOM also requires CDCR to refer IEX incidents to the District Attorney.  *Id*.

**C.   Luna is subjected to a single IEX Incident by an inmate patient who attended one of her group classes**

During her entire time working at the mental-health unit at CMF, Luna has experienced only a single IEX incident.  AER Vol. 1, 96, 105-06.  The incident involved an Inmate Patient who had been attending Luna's group classes for over one year.  AER Vol. 1 at 94.  Prior to February 9, 2018, the

---

[1] "An exposure-control jumpsuit denies the inmate the ability to relieve himself to deprive him of the opportunity to indecently expose himself.  The jumpsuit is made of canvas material and has loops going up the back with a nylon strap inserted through the loops.  After the inmate steps into the jumpsuit it is secured with a padlock."  *See Harris v. Robles*, No. 120CV01406SABPC, 2021 WL 6339270, at *2 (E.D. Cal. Feb. 4, 2021)

Inmate Patient had never engaged in any harassing conduct with Luna, and Luna is not aware of the Inmate Patient engaging in any harassing conduct with other nurses. *Id*. at 96. And Luna had never expressed any safety concerns regarding the Inmate Patient before the IEX incident. *Id*. at 97-98. The Inmate Patient once told Luna when they were alone together during one of her classes that he was in prison for murdering another Asian woman and that he hit her head with a big rock and left her dying on the ground. AER Vol. 2, 249. Luna "didn't take that like a threat or what because some—some inmates do tell their stories." AER Vol. 1, 119. Nor did Luna report that interaction to CDCR.

On February 9, 2018, Luna was conducting a group session with a group of inmate patients at CMF, when the Inmate Patient committed a single act of IEX in her presence. AER Vol. 1 at 88-89. During a group class, the Inmate Patient exposed himself and masturbated while staring at Luna from his bench. *Id*. at 88-89. The incident did not involve any physical contact between the Inmate Patient and Luna. The Inmate Patient did not try to assault, approach, come close to, or touch Luna. *Id*. at 92.

All CDCR staff are equipped with an alarm and a whistle to call for guards' assistance. *Id*. at 91. In response to the IEX, Plaintiff did not activate the alarm, instead she left the room. *Id*. While quickly exiting the

6

room, Plaintiff lost her balance and hurt her left ankle, which she had previously injured at work. *Id.* Once in the hallway, Plaintiff saw the regular guards on that wing, called for help, and the guards arrived promptly. *Id.* at 90.

Luna then ordered the Inmate Patient to step out of the room and he complied with this order. *Id.* at 91. The guards handcuffed the Inmate Patient and temporarily put him in isolation in the O-2 wing, away from everyone. *Id.* The Inmate Patient was immediately removed from Luna's class and assigned to a different group class with a different Registered Nurse. *Id.* at 101-102.

Luna reported the incident to the officers on duty, her direct supervisor, and the sergeant on duty. *Id.* at 93-94.

### D. CDCR's Responsive Measures

Following Luna's report of the IEX incident, CDCR took a series of actions consistent with its policies to protect Luna and to prevent any further IEX. AER Vol. 1, 47. First, CDCR immediately and permanently banned the Inmate Patient from attending Luna's group classes. AER Vol. 1, 94, 101, 107-08. The Inmate Patient was never in Luna's classes again. *Id.* at 107-108.

7

Second, CDCR instituted administrative disciplinary proceedings against the Inmate Patient. CDCR also referred the Inmate Patient for a mental-health evaluation. On March 12, 2018, CDCR held a disciplinary hearing and found the Inmate Patient guilty of the offense of indecent exposure under California Code of Regulations, Title 15, Section 3007, which prohibits inmates from participating in illegal sexual acts. AER Vol. 1, 148. CDCR imposed maximum penalties allowed for under the regulations on the Inmate Patient. CDCR removed the maximum 90 days of credits, which are earned through good conduct and can result in an earlier release date. CDCR also removed canteen privileges for the maximum 90 days, phone privileges for the maximum 90 days, appliance (*e.g.*, radios or television) privileges for the maximum 90 days, personal property privileges for the maximum 90 days, and packages privileges for the maximum 90 days. *Id*. at 154-55. The Inmate Patient was also required to wear an exposure-control jumpsuit for 90 days and screens were placed in the Inmate Patient's cell windows limiting his view of staff for 90 days.[2] *Id*.

---

[2] Further penalties (such as suspension of yard privileges) were not assessed based upon the recommendations of the clinician who performed the mental-health evaluation of the Inmate Patient. AER Vol. 1, 155.

Third, CDCR referred the matter to the Solano County District Attorney for prosecution. The District Attorney ultimately decided not to file charges. *Id*. at 148, 159.

Luna acknowledged that CDCR followed the departmental policy concerning inmate sexual misconduct. AER Vol. 1, 146 ("Employee Report of Sexual Misconduct" form dated "02/09/18" and signed by Luna, answer "Yes" circled for both the question "Was departmental policy concerning inmate sexual misconduct followed?" and the question "Was Sexual Misconduct Reduction policy discussed with reporting employee?").

### E. Luna Has a Total of Three Minor Encounters with the Inmate Patient Seven Months Later

The Inmate Patient never again was involved in an IEX incident with Luna or any other nurse. AER Vol. 1, 105-106. After the February 2018 IEX incident, Luna had no contact whatsoever with the Inmate Patient for seven months. Starting in October 2018, Luna had a total of three objectively minor encounters with the Inmate Patient.

In October 2018, Luna noticed the Inmate Patient staring at her through the classroom window from a distance in the O-2 building's central hallway while she was working in her classroom. AER Vol. 2, 240. Inmates waiting for a doctor appointment or a group class are visible from the hallway, as

9

was Inmate Patient during this incident.  Nothing else occurred in this

encounter.  Luna did not interact with the Inmate Patient, the Inmate Patient

said nothing to her and she said nothing to him, and there was no physical

contact between Luna and the Inmate Patient.  Luna did not request guards

to intervene or otherwise take action relating to her noticing the Inmate

Patient.  AER Vol. 1, 115, 118, 120-21, 124.

On October 22, 2018, Luna had just locked up her classroom and was

walking down the hallway when she saw the Inmate Patient staring at her in

the hallway.  AER Vol. 1, 114-15.   After the Inmate Patient started walking

toward her path, Luna avoided any interaction with him by talking to a

janitorial staffer about cleaning her classroom.  *Id*. at 116.  When she

finished her conversation with the janitorial staffer, the Inmate Patient was

gone.  AER Vol. 1, 116-17.

On November 29, 2018, the Inmate Patient briefly entered Luna's

classroom unannounced and without cause.  AER Vol. 1, 121.  The Inmate

was approximately five to seven feet away from Luna and never attempted

to approach her.  He briefly stated that he enjoyed her class and asked if he

could join it.  *Id*. at 122.  Luna did not answer but instead ordered him to

step out of the room.  The Inmate Patient promptly complied with her order.

*Id*. at 122-23.  He was not violent and did not threaten her during this encounter, and she did not use her alarm or whistle.  AER Vol. 1, 124.

## V.  PROCEDURAL HISTORY

Luna filed her complaint with the District Court on November 12, 2020, naming both CDCR and CMF as defendants.  AER Vol. 1, 11.  Luna alleged a single claim of sexual harassment under Title VII.  AER Vol. 1, 12.  Her claim was based solely on the IEX by the Inmate Patient in February 2018, and the subsequent non-sexual interactions with him in October and November 2018.  *Id*.

CDCR moved for summary judgment on November 19, 2021.  (Dkt. No. 30.)  CDCR argued that Luna's sexual harassment claim failed as a matter of law because she was not subjected to a severe or pervasive harassment sufficient to establish a hostile work environment based on a single IEX incident.  AER Vol. 1, 53-57.  CDCR also presented undisputed evidence that it reasonably and appropriately responded to the IEX with and effective measures that were successful in preventing any further IEX incidents by the Inmate Patient.  *Id*. at 58-60.

Luna's opposition did not dispute any material facts.  AER Vol. 2 241 (identifying the "disputed facts" as "whether the Defendant too reasonable action under the circumstances" and "whether Plaintiff's complaint is time-

11

barred," both of which are legal issues, not factual disputes.)  Luna argued that her interactions with the Inmate Patient established a hostile work environment.  She argued CDCR ratified the Inmate Patient's conduct because it did not completely eliminate all subsequent encounters between Luna and the Inmate Patient.  AER Vol. 2, 241-245.

The District Court granted summary judgment on April 28, 2022, and dismissed Luna's complaint.[3]  The District Court reasoned that Luna's encounters with the Inmate Patient, even viewed in the light most favorable to her, did not amount to a hostile work environment.  AER Vol. 2 at 528. The District Court stated that the single IEX incident, even combined with the subsequent encounters in October and November, were insufficient under the circumstances to establish a pervasively hostile environment: "[V]iewing the single IEX incident in conjunction with the subsequent non-physical encounters, the inmate's overall conduct does not display a level of (physical) seriousness and potential harm that warrants a reasonable finding

---

[3] In addition to dismissing the Title VII hostile-environment claims, the District Court also dismissed Luna's state-law claims because they are barred by the Tort Claims Act, the California Workers' Compensation Act, and the statute of limitations.  Appellant's appeal is strictly limited to her Title VII hostile-work-environment claim, and she has abandoned her state-law claims.  *See Sabra v. Maricopa Cty. Community College Dist.*, 44 F.4th 867, 881-82 (9th Cir. 2022).

of 'continuing abuses' or 'multiple occasions of harassment.'" *Id*. at 520 (citations omitted). However, the District Court determined that the issue of hostile work environment need not be decided because CDCR took reasonable and effective measures designed to stop the harassment.

The District Court determined summary judgment was proper because "Plaintiff has failed to offer sufficient evident to show Defendants' responses to her sexual harassment complaints were unreasonable or inappropriate and thus has not established a basis for Defendants' liability." AER Vol. 2, 531. The District Court noted that "remedial measures do not fail to be 'reasonably calculated to minimize such harassment and protect the safety of its employees' simply because they fall short of victims expectations." *Id*. at 535. The District Court pointed out that Plaintiff offered no evidence showing that Defendants' handling of the IEX incident was "delays, reluctant, or ineffective in preventing further IEX incidents, or that her subsequent encounters with the inmate amounted to harassment or misconduct that required intervention or disciplinary actions." *Id*.

This appeal followed. In her appeal, Luna's only assertion of error is her argument that the District Court should not have granted summary judgment as to her sexual harassment claim under Title VII. Luna does not raise any argument regarding her state-law claims.

## VI.  LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and declarations show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (a).  When a defendant moves for summary judgment of a plaintiff's claims, the moving party can meet its burden by pointing out the absence of evidence from the nonmoving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant meets his burden, the burden shifts to the non-movant to show summary judgment is not appropriate.  *Celotex*, 477 U.S. at 317, 324.

"Once the moving party meets its initial burden, a nonmoving party must go beyond the pleadings and, by its own affidavits or by the depositions, answers to interrogatories, and admissions on file, come forth with specific facts to show that a genuine issue of material fact exists and that a reasonable jury could return a verdict for the nonmoving party."  *Reynolds v. County of San Diego*, 84 F.3d 1162, 1166 (9th Cir. 1996).  The mere existence of a scintilla of evidence in support of the plaintiff's position will likewise be insufficient; plaintiff must produce evidence of specific facts from which the jury could reasonably find for the plaintiff.  *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 250 & 252 (1986).  Unless the

14

nonmoving party brings forth sufficient evidence to demonstrate the existence of genuine issues for trial, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). In reviewing the District Court decision, this Court may affirm on any ground that has support in the record, whether or not the District Court decision relied on the same grounds or reasoning adopted by the appellate court. *See Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1169 (9th Cir. 2013).

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT SUMMARY JUDGMENT ON APPELLANT'S TITLE VII CLAIM WAS PROPER

The District Court's decision to grant summary judgment was correct and should be affirmed by this Court. First, the IEX incident and Luna's subsequent minor, non-sexual interactions with the Inmate Patient were insufficient to constitute severe or pervasive harassment sufficient to create a hostile working environment. Second, the undisputed facts established that CDCR took prompt and effective responsive measures reasonably designed to prevent further harassment – including segregating, disciplining, referring for prosecution, and banning the Inmate Patient from Appellant's classes – Appellant has not presented sufficient evidence to allow a reasonable jury to

conclude that CDCR's response was unreasonable. Each of these reasons independently support affirmation of the District Court's judgment.

### A. The Undisputed Material Facts Established Luna Was Not Subjected to a Hostile Work Environment.

The District Court properly granted summary judgment because the undisputed facts established Luna was not subjected to a hostile work environment as a matter of law. Where, as here, an employee is suing an employer for sexual harassment based on the actions of a non-employee, the plaintiff must establish both (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist. *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006).

With respect to the first question, a hostile work environment exists where plaintiff was subjected to unwelcome verbal or physical conduct of a sexual nature that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Id.* In determining whether conduct was sufficiently severe or pervasive to constitute an abusive work environment, courts consider the totality of the circumstances. *Id.* Courts consider the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1113-15 (9th Cir. 2004) (citations omitted). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* (internal quotation marks and citations omitted). A single incident must be extremely severe to constitute sufficiently "severe" harassment to create an abusive work environment. *See Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000).

The undisputed facts established that Luna was never subjected to pervasive harassing conduct. Luna was actively employed from 2004 to 2018 as a registered nurse in CMF's psychiatric unit, responsible for offering medical treatment to inmates with mental disabilities, in what could reasonably be described as a job that is extremely stressful on a daily basis. During her entire 14-plus years of service at the prison, Luna reported only one IEX incident. AER Vol. 1, 96, 105-106. Where a claim of hostile work environment is based on a single incident, the severity requirement is heightened. *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991) ("the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct"). Here, the single incident of harassing conduct by a nonsupervisor, even combined with

17

subsequent sporadic encounters, does not meet the "severe and pervasive" requirement.

Luna also was not subjected to severe and pervasive harassment under the totality of the circumstances. There is no doubt that the Inmate Patient's IEX conduct was reprehensible and upsetting. That said, this is not a case of a sexual assault or inappropriate touching. The Inmate Patient never inappropriately touched Luna. AER Vol. 1, 92. The Inmate Patient was some distance away from Luna and not close enough to touch her during the IEX incident. *Id.* There were others present and Luna had an alarm on her and knew there were guards nearby lessening the chance the incident would escalate further and giving her comfort that she could end it. *Id.* at 90-92. Under these circumstances, Luna was not subjected to sufficiently severe conduct to create an objectively abusive work environment. *See Ludovico v. Kaiser Permanente*, 57 F.Supp.3d 1176, 1180, 1194-1196 (N.D. Cal. 2014) (single incident where coworker grabbed plaintiff and pulled her to him telling her he would take his big wet tongue and shove it into her mouth a few times and she would like it did not constitute severe harassment).

It is also notable that the individual committing the inappropriate conduct was an Inmate Patient. Courts recognize that the same harassing conduct engaged in by a supervisor is more severe because the supervisor

18

has authority over the employee. Because a co-worker does not have authority over the employee, the same conduct is less likely to meet Title VII's severity requirement. *Ludovico*, 57 F.Supp.3d at 1194-1995. In this case, the conduct was committed by an inmate with no authority over Luna, and whom Luna was able to direct in connection with her job.

Moreover, the context of the alleged harassment must be considered in assessing whether it is severe or pervasive. By choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior." *Slayton v. Ohio Dept. of Youth Servs*., 206 F.3d 669, 676 (6th Cir. 2000). An inmate is more likely to act in a socially irresponsible way than other members of society. "Prisoners, by definition, have breached prevailing societal norms in fundamentally corrosive ways. So what amounts to severe or pervasive misconduct in a prison setting is different than what amounts to severe or pervasive misconduct in an office setting. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (court must carefully consider "the social context in which particular behavior occurs); *Daniels v. CDCR*, No. 2:10-cv-00003-MCE-AC, 2013 U.S. Dist. LEXIS 165897, at *7 (E.D. Cal.

19

Nov. 20, 2013)[4] ("[S]evere and pervasive misconduct in a correctional setting is wholly different than what would be reasonably expected within the confines of, for example, a law office.").  A reasonable woman, trained as a registered nurse, who chose to work and did work at CMF for over 14 years like Luna, would not have reasonably considered her work environment hostile or abusive based on one reported IEX incident and a few instances of sporadic and objectively minor contact with the same inmate months later.

In sum, the conduct in this case, consisting of one single act of inmate IEX, which did not involve any physical contact or derogatory statements towards Luna, cannot be deemed sufficiently severe or pervasive to alter the conditions of Luna's employment and create an abusive work environment for her.  Under the circumstances neither the single IEX incident, nor Luna's subsequent non-sexual encounters with the Inmate Patient months later, were sufficiently severe and pervasive to amount to a hostile work environment.  *McGinest*, 360 F.3d at 1113-15.

On appeal, Luna argues that "it was improper for the District Court to act as factfinder of the pervasiveness or severity of the IEX at the summary

---

[4] Under F.R.A.P. 32.1, unpublished opinions issued after January 1, 2007 may be cited to this Court.

judgment stage." OB at 19. This assertion misconstrues the District Court's

conclusion regarding a hostile work environment. The District Court did not

act as a "fact finder." Rather, the District Court properly concluded, based

on the *undisputed* material facts in the context of the prison environment and

Plaintiff's job duties, that there was no reasonable basis to support a finding

that the IEX and subsequent encounters with the Inmate Patient created a

hostile work environment *as a matter of law*. AER Vol. 2, 531. *See Brooks*,

229 F.3d at 926-27 (affirming district court's grant of summary judgment on

Title VII hostile work environment based on single incident of harassment).

### B. Summary Judgment Was Proper Because CDCR Took Immediate, Appropriate, and Effective Corrective Action

Summary judgment was also proper is because the undisputed evidence

established that CDCR took immediate, appropriate, and effective corrective

action upon learning of the Inmate Patient's harassing conduct. An

employer is not liable for the harassing act of an inmate or other non-

employee. Rather, it is only liable for its own negligence or ratification of

the misconduct by failing to take immediate and/or corrective actions when

it knew or should have known of the conduct. *Freitag*, 468 F.3d at 538.

The question of CDCR's liability hinges on its responses to the Inmate

Patient's conduct—specifically, whether its responses were prompt,

21

reasonable, and effective. *Id.* at 539-40. There is no employer liability for harassment caused by a third party where, as here, the employer promptly responds to the harassment with corrective measures "reasonably calculated to end the harassment." *Freitag*, 468 F.3d at 539-40.

CDCR cannot be held liable for third-party harassment if it took remedial measures reasonably calculated to end the harassment. *Dawson v. Entek Int'l*, 630 F.3d 928, 940-41 (9th Cir. 2011). "The reasonableness of the remedy depends on its ability to: (1) 'stop harassment by the person who engaged in harassment;' and (2) 'persuade potential harassers to refrain from unlawful conduct.'" *Dawson*, 630 F.3d at 940-41 (quoting *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 875 (9th Cir. 2001). Remedial measures may include some form of disciplinary action proportionate to the seriousness of the offense. *Dawson*, 630 F.3d at 940-41.

In this case, CDCR is entitled to summary judgment because the undisputed evidence showed it responded to the IEX incident and Luna's safety concerns promptly and in a way reasonably designed to stop further harassment. Following Luna's report of the IEX incident, CDCR immediately and permanently banned the Inmate Patient from attending Luna's group classes. AER Vol. 1, 94, 101, 107-08. The Inmate Patient was never in Luna's classes again. *Id*. at 107-108. This effectively reduced

22

the likelihood of any recurrence because Luna no longer taught the Inmate Patient and there was far less chance of any future interaction.

CDCR also took actions to punish the Inmate Patient for his misconduct and to deter repetition of that misconduct. In accordance with CDCR policies, on March 12, 2018, CDCR held a disciplinary hearing. The hearing is a formal proceeding and would have impressed upon the Inmate Patient that CDCR was taking the incident seriously and there would be consequences if he was found to have committed the charged misconduct. The disciplinary hearing resulted in a meaningful finding that the Inmate Patient was guilty of the offense of indecent exposure under California Code of Regulations, Title 15, Section 3007. AER Vol. 1, 148. The CDCR then imposed severe penalties reasonably designed to deter further misconduct. Specifically, CDCR penalized the Inmate Patient by removing the maximum 90 days of good behavior credits, essentially lengthening his prison sentence as a practical matter. CDCR also removed phone privileges and packages privileges for the maximum 90 days, as well as canteen, personal property, and appliance privileges for the maximum 90 days. *Id*. at 154-55. In other words, the Inmate Patient's penalties limited his contact with the outside world – via telephone, packages, television, radio, etc. – for three months.

23

This is close to the maximum penalty possible under CDCR policies. AER Vol. 1, 236.

The CDCR also imposed severe physical constraints on the Inmate Patient. The Inmate Patient was required to wear an exposure control jumpsuit for 90 days. This physically prevented the Inmate Patient from engaging in indecent exposure. The CDCR also placed screens in the Inmate Patient's cell windows for 90 days. This limited his view of, and ability to interact with, staff. AER Vol. 1, 154-55.

Finally, CDCR referred the matter to the Solano County District Attorney for prosecution, although the District Attorney decided not to file charges. AER Vol. 1, 148, 159.

The actions taken by CDCR in response to the IEX were not only reasonable and in accordance with CDCR's policies, they were also effective. This is evidenced by the uncontested fact that Luna did not have any subsequent IEX incidents involving the Inmate Patient or any other inmates. AER Vol. 1, 59. CDCR's prompt, reasonable, and effective action precludes liability for a hostile-work-environment claim. *See Bodman v. Maine, Dep't of Health & Hum. Servs.*, 787 F.Supp.2d 89, 104 (D. Me. 2011) (summary judgment granted on hostile work environment claim against employer where employer's actions were effective in preventing

24

further harassment of plaintiff by a third party); *Harvill v. Westward Communications LLC*, 433 F.3d 428 (5th Cir. 2005) (summary judgment granted on hostile work environment claim where employer's actions were effective in preventing further harassment of plaintiff by a co-worker).

The three subsequent encounters with the Inmate Patient highlight the effectiveness of CDCR's response. None of these encounters involved sexually harassing conduct. The Inmate Patient had no physical contact with Luna, never made an inappropriate or sexual or derogatory statement to her, and never made any sort of offensive gesture. There was a grand total of three non-sexual interactions, all of which were brief. And there are no facts that suggest that these interactions amounted to harassment that required intervention or disciplinary measures. These three minor interactions were simply the result of the group classrooms being in the same building where the patients go for medical appointments. CDCR cannot be reasonably expected to intervene or discipline the Inmate Patient for walking down the same hallway as Luna or looking through a window at her. AER Vol. 2, 478-79.

In sum, soon after the IEX incident the Inmate Patient was banned from Luna's group classes, subjected to an administrative proceeding, severely disciplined, and then referred to the District Attorney for criminal

prosecution.  AER Vol. 1, 94, 101.  CDCR's responses were reasonable under the circumstances and effective at preventing further harassment and so preclude its liability under Title VII.

## C.   CDCR's Corrective Actions Were Consistent with All Applicable Policies

On appeal, Luna argues that CDCR's remedial actions were inadequate because she had three subsequent encounters with the Inmate Patient in the O-2 building.  (OB at 24.)  She apparently argues that CDCR should have guaranteed that she have no contact of any kind with the Inmate Patient.  CDCR, however, cannot reasonably be expected to implement procedures that would preclude an inmate's medical treatment and/or disrupt the facility's operations.  CDCR has a duty to protect inmates' right to adequate medical care under the Eighth Amendment and the relevant case law.  *See Coleman v. Schwarzenegger*, 922 F.Supp.2d 882, 898-99 (E.D. Cal. 2009).

The fact that Luna would have preferred CDCR to have taken additional measures such as transferring the Inmate Patient out of the facility (OB at 19-20), is not material.  Remedial measures do not fail to be reasonably calculated to minimize such harassment and protect the safety of its employees simply because they fall short of victim's expectations.  See *Freitag*, 468 F.3d at 541.  Luna conceded that CDCR followed existing

policies or protocols during its handling of the IEX incident. AER Vol. 1, 146. She presented no evidence that CDCR's handling of the IEX incident was delayed, reluctant, or ineffective in preventing future IEX incidents.

Luna's argument that CDCR failed to follow its own policies is wrong.[5] Indeed, as the District Court pointed out, "Plaintiff conceded that Defendants following existing policies or protocol during their handling of her IEX incident and the subsequent encounters." AER Vol. 2, 535. Appellant's argument fails to support any contrary conclusion – she points to no evidence that CDCR's actions taken in response to the IEX were ineffective in preventing future harassment, or that any of her three subsequent interactions with the Inmate Patient amounted to misconduct that required disciplinary measures.

Luna's citation to CDCR's DOM highlights that the evidence established CDCR followed its policies in dealing with the IEX incident in this case. The DOM provides that an inmate who engages in IEX "shall be subject to a variety of Security Measures in an attempt to identify, prevent,

---

[5] Luna's argument that CDCR presented "inapplicable policies" to the District Court (OB at 24) makes no sense because the Inmate Sexual Misconduct Reduction Plan that Luna cites was neither relied on in CDCR's summary judgment motion nor in the District Court's order granting summary judgment.

reduce, and eliminate the opportunity to repeat the behavior." OB at 25; AER Vol. 1, 234-36. The uncontested facts establish that CDCR's responsive measures fully complied with this policy. As the policy requires, CDCR took security measures designed to decrease the opportunity for the Inmate Patient to repeat the behavior and/or minimize the impact that the behavior has on prison staff and others, such as the exposure control jumpsuit and the screen limiting his contact with staff. CDCR also imposed the disciplinary restrictions provided for in its policy, such as reversing good behavior credits for 90 days, and multiple other restrictions of privileges. While Luna argues that CDCR failed to follow its policy in that "[t]he IEX did not result in a ban of Inmate by [CDCR] in [Luna's] classroom," Luna admitted in her deposition that the Inmate Patient was in fact banned from attending Luna's group classes:

> Q. After that February 9, 2018, was [Inmate Patient removed from your group classes, or was he still a group member in your classes.

> A. No. He was immediately removed from my class after that February 9th incident.

> * * *

> Q. Okay. After the February 9, 2018 incident, did you have to teach [Inmate Patient] in your class ever again?

28

> A. Like I said earlier, he was automatically removed from my class after the incident happened.
>
> Q. Okay.
>
> A. So he is banned from my class. And he's aware about this.

AER Vol. 1, 101, 107-08. To the extent that Luna is now attempting to draw a distinction between the "nursing department" banning the Inmate Patient from her classes, and CDCR doing the banning (OB at 26) – such a distinction does not exist. What matters is that CDCR management took immediate, appropriate steps to prevent the Inmate Patient from taking classes with Luna, and those steps were effective.

Luna also attempts to fault CDCR for not taking further steps after Luna reported the three subsequent encounters with the Inmate Patient. (OB at 26.) Luna fails to show, however, that these encounters amounted to misconduct or harassment that would require further measures under any CDCR policy or protocol. As noted above, these three minor and non-sexual interactions were simply the result of the group classrooms being in the same building where the patients go for medical appointments and did not warrant disciplinary measures.

In sum, Appellant has not presented evidence to permit a reasonable jury to conclude that CDCR's response was so insufficient that it amounted

to ratification or acquiescence of the harassment. *See Freitag*, 468 F.3d at 538. Appellant's claim should therefore be dismissed.

## CONCLUSION

Inmate IEX is an issue that CDCR takes seriously. In this case, CDCR took prompt measures to protect Luna and to discipline the Inmate Patient to deter him from further misconduct. CDCR's actions were both reasonable and effective as Luna experienced no further IEX. Accordingly, this Court should affirm the District Court's decision to dismiss Luna's Title VII claim.

Dated: July 18, 2023        Respectfully submitted,

ROB BONTA
Attorney General of California
CHRIS A. KNUDSEN
Senior Assistant Attorney General
MIGUEL A. NERI
Supervising Deputy Attorney General

*/S/ GREG CALL*

GREG CALL
Deputy Attorney General
*Attorneys for California Department of Corrections and Rehabilitation; California Medical Facility*

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**MARIA C. LUNA,**

Appellant,

**v.**

**CALIFORNIA DEPARTMENT OF
CORRECTIONS AND
REHABILITATION; CALIFORNIA
MEDICAL FACILITY,**

Respondents

**STATEMENT OF RELATED CASES**

To the best of our knowledge, there are no related cases.

Dated:  July 18, 2023                  Respectfully submitted,

ROB BONTA
Attorney General of California
CHRIS A. KNUDSEN
Senior Assistant Attorney General

*/s/ GREG CALL*

GREG CALL
Deputy Attorney General
*Attorneys for  Employment Litigation*

31

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 20-cv-08097-EMC

I am the attorney or self-represented party.

**This brief contains** 6,738 **words,** including 6,738 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Greg Call **Date** July 18, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   *Maria C. Luna v. CDCR, et al.*
No.:         Ninth Circuit Court of Appeals Case No.: 22-15769

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service with postage thereon fully prepaid that same day in the ordinary course of business.

On July 18, 2023, I served the attached **APPELLEES' ANSWERING BRIEF** by placing a true copy thereof enclosed in a sealed envelope in the internal mail collection system at the Office of the Attorney General at 1515 Clay Street, 20th Floor, P.O. Box 70550, Oakland, CA 94612-0550, addressed as follows:

The Honorable Edward M. Chen
United States District Court-Northern
Division
450 Golden Gate Avenue, Courtroom 5
17th Floor
San Francisco, California 94102

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 18, 2023, at Oakland, California.

| | |
|---|---|
| Christine Soo | *Christine Soo* |
| Declarant | Signature |

OK2022900140
91645899.docx